IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION


MICHAEL ALAN PETZOLD            §

v.                              §          CIVIL ACTION NO. 5:15cv163

MIKE ROSTOLLAN, ET AL.          §


MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT


Plaintiff Michael Petzold, proceeding *pro se*, filed this civil action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 391-92, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) complaining of alleged violations of his rights. This Court referred the case to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named defendants are Nurse Michael Rostollan, Lt. Christopher Wooding, and Lt. John Williams, prison officials located at the Federal Correctional Institution at Texarkana.

The Magistrate Judge recommended Plaintiff's claims be dismissed in her Report and Recommendation filed July 14, 2017. Plaintiff filed objections to the Magistrate Judge's Report and Recommendation. This requires a *de novo* review of the objections in relation to the pleadings and the applicable law. *See* Federal Rules of Civil Procedure 72(b).

The Court has received and considered the Report and Recommendation of United States Magistrate Judge filed pursuant to such order, along with the record, pleadings, Plaintiff's objections and all available evidence. The Court concludes Plaintiff's objections should be overruled, and the Court adopts the Magistrate Judge's report (Docket No. 30) as the findings and conclusions of the Court.

## I. Plaintiff's Rule 56(d) Motion for Continuance on the Ruling on Summary Judgment until Discovery Has Been Conducted

Before the Court considers Plaintiff's objections to the Report and Recommendation, it will address Plaintiff's recently filed Rule 56(d) motion for a continuance on the ruling on summary judgment until discovery has been conducted. Docket No. 37. Plaintiff asserts he has not had an opportunity to conduct discovery as contemplated by the scheduling order entered in this matter and asks the Court to "hold a continuance on the ruling of summary judgment to his resulting 4 constitutional claims of his complaint." *Id*. at 2.

In her Report and Recommendation, the Magistrate Judge specifically found Plaintiff had "ample notice of intent to treat the motion as one for summary judgment." Docket No. 30 at 2. She noted that on December 9, 2016, Defendants filed a motion to dismiss or alternatively for summary judgment, which included considerable evidence outside the pleadings. Plaintiff filed an extensive response to this motion on February 27, 2017, referring to the Defendants' motion as one for summary judgment. Docket No. 24. Plaintiff also furnished a considerable amount of summary judgment evidence.

Rather than continue the ruling on summary judgment, the Court will consider the issue of Plaintiff's alleged lack of discovery in its *de novo* review of the motion, as this issue was also

raised in Plaintiff's objections. In conducting its *de novo* review, the Court will consider the declaration attached to Plaintiff's motion for continuance. Thus, Plaintiff's motion for a continuance of the ruling is denied.

## II. Background

In his original complaint, Plaintiff states between March and September of 2013, he sought through informal resolution and the grievance process "to resolve the issue of insulin line not being done with [sic] meal time." Docket No. 1. The nursing staff, including Rostollan, voiced "disapproval and disgust" over the possibility of the change being sought by Plaintiff. *Id*. On September 11, 2013, Plaintiff spoke to Health Services Administrator Rayburn about the insulin line procedures, and Rayburn lost his temper. *Id*.

Plaintiff states he goes to the health service unit twice a day and routinely interacts with Nurse Rostollan, with whom he had never previously had any problems. *Id*. On October 18, 2013, Plaintiff injured his left ankle exercising in the gym. *Id*. He returned to his housing unit and realized the injury was severe when he took off his shoe and the swelling became severe. *Id*. When count cleared, Plaintiff states he reported the injury to the housing officer, Terral, who told him to go eat dinner and he, the officer, would notify the medical department. *Id*.

As Plaintiff limped to the dining hall, he states he saw Nurse Rostollan in the hallway, who asked him "what did you kick?" *Id*. Plaintiff replied his housing unit officer would be calling the medical department about it. *Id*. Nurse Rostollan continued walking. *Id*. Plaintiff looked back and saw the nurse talking to Officer Terral and a few other officers. *Id*.

After dinner, Plaintiff returned to his unit. *Id*. Officer Terral told him the nurse said to go to sick call, but Plaintiff replied sick call was not until Monday and this was Friday. *Id*. Plaintiff then went on to the insulin line to receive his insulin. *Id*.

At the insulin line, Nurse Rostollan drew Plaintiff's insulin into a syringe. *Id*. Plaintiff asked if he would wait until the insulin line was finished and have Nurse Rostollan look at his ankle, and possibly provide him with a wrap or some medication to help with the swelling. *Id*. Defendant Rostollan told him medicine for swelling could be purchased at the commissary and Plaintiff should put some ice on it. *Id*.

After taking his insulin, Plaintiff asked Defendant Rostollan if he wanted to see the extent of the swelling, noting that the commissary did not open until Monday. *Id*. He gave the syringe back to Defendant Rostollan and stepped out of the way for the next inmate in line, Gary Myers. *Id*. Defendant Rostollan stated Plaintiff should go find some Motrin in the housing unit and someone there should be able to give him some; however, Plaintiff contends prisoners are not allowed to have pills which they did not purchase themselves or which were not given to them by medical staff. *Id*. He asked Myers "did you hear that" and told Myers he would need a statement from him. *Id*.

Plaintiff states no examination or assessment was done of his ankle. *Id*. When he returned to his housing unit, Officer Terral stated he had been told to take a picture of Plaintiff's ankle and to lock Plaintiff up. *Id*. Three pictures were taken of Plaintiff's ankle, and he was placed in a "dry cell," which Plaintiff explains is a 10 by 15 foot cell containing only a wooden bench. *Id*. Plaintiff remained in that cell for almost two hours. *Id*.

At 7:30 p.m., Defendant Wooding took him out of the dry cell and to the office. *Id*. He told Plaintiff Defendant Rostollan stated Plaintiff had been insolent in the pill line and wanted Plaintiff put in the Special Housing Unit. *Id*. Plaintiff explained what had happened and Defendant Wooding replied Plaintiff became insolent when he asked Myers if Myers had heard what was said and for a statement. *Id*.

Nonetheless, Defendant Wooding told Plaintiff he was not going to put Plaintiff in the Special Housing Unit that night because he had never seen Plaintiff in trouble. *Id.* He told Plaintiff to go to sick call on Monday and if he, Defendant Wooding, hears of any problems, Plaintiff would be locked up in the Special Housing Unit. *Id.*

Plaintiff stated he spent all weekend in pain, including having to limp to the insulin line twice a day as well as reporting to his work assignment. *Id.* He iced his foot but was still in pain. *Id.*

The next Monday, October 21, 2013, Plaintiff stated he reported to morning sick call. *Id.* Nurse Dusseau told him he should not have been walking on his ankle until it was X-rayed and the results were in. *Id.* Nurse Dusseau also told him the injury looked bad and should have been wrapped and elevated. *Id.* He gave Plaintiff crutches, an Ace wrap, a pain medication called ibuprofen, and a pass to not report to work or his education class. *Id.*

According to Plaintiff, Defendant Rostollan came in later that day and entered a false "clinical encounter" claiming he had assessed Plaintiff's injury and rated his pain level. *Id.* Defendant Rostollan then wrote an incident report claiming Plaintiff did not report his injury to the housing officer before mentioning it to Defendant Rostollan in the insulin line. *Id.* Plaintiff states this incident report was thrown out by Lt. Rolader. *Id.*

Plaintiff filed a BP-8 request for informal resolution on October 28, 2013. *Id.* On October 31, 2013, he filed separate grievances against Defendant Rostollan and against Health Services Administrator Rayburn. *Id.*

A week later, Plaintiff stated he was interviewed by Defendant Williams, who expressed "disinterest" in his grievances. *Id.* Williams stated Plaintiff did receive medical care on the Monday following his encounter with Defendant Rostollan. *Id.*

Plaintiff asked if Defendant Williams had received the other grievance he filed, and Williams stated he would have Plaintiff brought back for an interview once the grievance was received from the administrative remedy coordinator. *Id.* The next day, Plaintiff was brought back to the S.I.S. (special investigation supervisor) office, but he was handcuffed and told he would be placed in the Special Housing Unit. *Id.*

Once in the Special Housing Unit, Plaintiff received a copy of an order stating the correctional supervisor had determined Plaintiff's continued presence in general population posed a risk because of an S.I.S. investigation. *Id.* Defendant Williams later told him his placement in special housing was done to prevent medical staff retaliation against him and he was not being punished. *Id.* Plaintiff reminded Williams he had started the grievance process well before his placement in special housing and stated many aspects of the confinement were punitive. *Id.* Williams told him if he had not filed the grievance or had resolved the matters informally, he would not be in segregation, but once he got the ball rolling with his grievances, he had to wait until the investigation was complete. *Id.*

While in special housing, Plaintiff stated he complained to Warden Young and the warden said he did not even know Plaintiff was in there. *Id.* On another occasion, he heard Defendant Rostollan tell Officer Lowry that Plaintiff "needs to be moved to that cell right there" for "diesel therapy," a prison term referring to an inmate labeled as a problem being constantly transferred and having no stability. *Id.* He reported this comment but received no reply. *Id.*

Plaintiff stated he stayed in a 9 by 7 foot special housing cell for 93 days, with only three showers per week. *Id.* He lost his cell assignment, his job assignment, and his class spot in the vocational training upholstery class, and was limited to only 15 minutes per week of telephone

time.  *Id*.  His time in the law library was also limited.  *Id*.  Plaintiff stated he received all of these restrictions without having broken any prison rules.  *Id*.

Plaintiff continued to file grievances and eventually was transferred from Texarkana to a county jail where proceedings in his criminal appeal were conducted.  *Id*.  Upon his return, he stated he had run-ins with members of the nursing staff but claimed he was deterred from filing grievances because of what had previously happened to him.  *Id*.

Plaintiff listed the following legal claims: (1) deliberate indifference by Defendant Rostollan to his medical needs by failing to examine his ankle or provide any care or treatment; (2) retaliation by Defendant Rostollan for filing grievances about the insulin line and unprofessional conduct by nursing staff; and then for filing a grievance against Defendant Rostollan; (3) failure by Defendant Wooding to ensure Plaintiff received proper medical care; and (4) retaliation by Defendant Williams.  *Id*.

### III. The Motion to Dismiss and the Response

The Defendants filed a motion to dismiss or for summary judgment arguing Defendant Rostollan was not deliberately indifferent, and that Plaintiff's disagreement with his treatment was not sufficient to show a constitutional violation, Plaintiff's retaliation claims are conclusory, Plaintiff failed to exhaust his administrative remedies against Defendant Williams, and the Defendants are entitled to qualified immunity.  Docket No. 12.

In his response, Plaintiff argued Defendant Rostollan denied him any examination or treatment for his ankle and told him to commit a prohibited act by obtaining medication on his unit.  Docket No. 14.  He complained Defendant Rostollan falsely reported he had been insolent and wrote a false disciplinary case against him.  *Id*.  He denied Defendant Rostollan told him to elevate his ankle and insisted no clinical encounter took place.  *Id*.  Plaintiff stated Defendant

Wooding knew about his injury and the lack of medical attention but did not care. *Id.* He asserted Defendant Wooding denied him medical care by ordering him to go to sick call on Monday, leaving Plaintiff to wait all weekend to receive care. *Id.*

Plaintiff claimed Defendant Williams threatened him with months of segregation and a unit transfer and no measures were taken to prevent retaliation because Defendant Rostollan still administered Plaintiff's insulin while he was in special housing. *Id.* Plaintiff argued the security staff does supervise medical personnel and he suffered unnecessary pain as a result of Defendant Rostollan and Defendant Wooding's actions. *Id.*

Plaintiff maintained he had exhausted his administrative remedies against Defendant Williams and denied it was routine practice to place an inmate in special housing because that inmate filed grievances. *Id.* He argued that the circumstances showed a chronology from which retaliation could be inferred. *Id.*

## IV. The Report of the Magistrate Judge

The Magistrate Judge determined the Defendants' motion should be construed as a motion for summary judgment because the Plaintiff discussed Defendants' motion as being one for summary judgment in his response, and both parties furnished summary judgment evidence. After review of the pleadings and the evidence, the Magistrate Judge issued a Report recommending the motion for summary judgment be granted. Docket No. 30.

The summary judgment evidence showed Defendant Rostollan had an "evaluation encounter" with Plaintiff at 6 p.m. on Friday, October 18, in which he instructed Plaintiff to ice and elevate his ankle and take over the counter medication. *Id.* Although Plaintiff asserted this "evaluation encounter" was fabricated, the Magistrate Judge stated unsupported assertions that a medical record has been fabricated are insufficient to create a genuine issue of material fact. *Id.*

Even assuming Plaintiff's version of events was correct, the Magistrate Judge stated Plaintiff nonetheless failed to show a constitutional violation. *Id.* Even if failure by Defendant Rostollan to take time from the insulin line to physically examine Plaintiff's ankle may have been negligent, the Magistrate Judge stated it did not rise to the level of deliberate indifference. *Id.* Plaintiff acknowledged Defendant Rostollan did not ignore his complaint but advised him to put ice on the ankle and take over the counter pain medication, which is standard initial treatment for an ankle injury. He was seen a few days later and received medical care, including X-rays and crutches.

While Plaintiff complained Defendant Rostollan gave him a false disciplinary case, the Magistrate Judge determined Plaintiff failed to show harm because he conceded the case was thrown out by Lt. Rolader. *Id.* The Magistrate Judge further stated that Plaintiff failed to show a chronology from which retaliation by Defendant Rostollan could be inferred and that Defendant Rostollan's comment regarding "diesel therapy" was not a constitutional violation. *Id.*

The Magistrate Judge determined Defendant Wooding did not have any supervisory authority over Defendant Rostollan or any other members of the medical staff and thus could not order Defendant Rostollan to provide Plaintiff with medical care. *Id.* Plaintiff's placement in the dry cell for only two hours was *de minimis*. Plaintiff acknowledges Defendant Wooding spoke to Defendant Rostollan, and the Magistrate Judge concluded Defendant Wooding was entitled to rely on Defendant Rostollan's determination Plaintiff did not require immediate medical attention. *Id.* In addition, the Magistrate Judge stated Plaintiff did not show the delay in seeing medical personnel from Friday evening until Monday morning resulted in substantial harm. *Id.*

With regard to Defendant Williams, the Magistrate Judge reviewed Plaintiff's grievances and determined Plaintiff failed to exhaust his administrative remedies. *Id*. Plaintiff raised his complaint about improper placement in the Special Housing Unit for the first time in his BP-10 Step Two grievance appeal, and the Magistrate Judge determined it was improper to raise claims for the first time in a Step Two appeal. *Id*. Finally, the Magistrate Judge concluded all of the Defendants were entitled to qualified immunity. *Id*.

## V. Overview of Plaintiff's Objections

### A. Defendant Rostollan

In his objections, Plaintiff first complains he has not had a chance to conduct discovery. Docket No. 36. He asserts the 70 exhibits he has submitted show his claims are not weak or tenuous, but render his claims "nearly irrefutable." *Id*. He argues the Defendants' evidence demonstrates genuine issues of material fact exist and complains the Magistrate Judge's Report did not take his claims as true or construe the evidence in favor of the non-moving party. *Id*. According to Plaintiff, the disputed facts include: whether Defendant Rostollan was first notified by Officer Terral; whether Defendant Rostollan falsified an incident report; why readily available tangible treatment options were not provided by Defendant Rostollan; whether Defendant Rostollan told Plaintiff to wait three days for the commissary to open to obtain pills; whether Defendant Rostollan told Plaintiff to commit a prohibited act and find some pills in the unit; whether Defendant Rostollan reported that Plaintiff did not receive an injury evaluation because Plaintiff chose not to; whether Defendant Wooding was aware of an obvious injury to Plaintiff; whether Defendant Wooding was notified that Defendant Rostollan had refused to follow policy; whether Defendant Rostollan is to ensure all staff including medical staff follow policy; whether Defendant Williams was disinterested in Plaintiff's grievance, whether

Defendant Williams took any steps to ensure Plaintiff's safety from the medical staff other than placing Plaintiff in the Special Housing Unit; whether prisoners are always placed in the Special Housing Unit for filing complaints on staff misconduct; and whether Defendant Rostollan was aware of Plaintiff's grievances.

After again contending that he has provided specific facts indicating a genuine issue for trial, Plaintiff asserts the Defendants have presented defenses which have no factual basis and are factually unsupported. *Id*. He states there are other undisputed facts showing his rights were violated, and judgment should have been rendered in his favor "when the Defendants have a meritless defense or give no evidence or challenge at all to a claims element." *Id*.

According to Plaintiff, the Report acknowledges Plaintiff followed proper procedures to get his injury evaluated, but the on-duty medical staff refused to follow the policy in place to have his injury assessed. *Id*. Instead, the medical staff provided him with no assessment and no tangible treatment. *Id*. Rather, they told him to go to sick call in three days and get medicine from the commissary. *Id*. He argues, under controlling Supreme Court precedent, the failure to provide medical treatment amounts to deliberate indifference.

 Although Defendant Rostollan told Plaintiff to put an ice pack on it, Plaintiff complains Defendant Rostollan did not provide him with ice or an ice pack, so another inmate gave Plaintiff a bucket to use. *Id*. He argues the failure to provide him with treatment amounts to an unnecessary and wanton infliction of pain. *Id*.

Next, Plaintiff argues the Report overlooked the "false clinical encounter" which Defendant Rostollan entered claiming an examination was done of Plaintiff's injury. *Id*. Yet Plaintiff states the Report recognized the incident report Rostollan wrote was thrown out. *Id*. He

also asserts Defendant Rostollan told Assistant Health Service Administrator Torey Haskins that Plaintiff chose not to have his supervisor call him in for an assessment. *Id.*

Plaintiff asserts an injury is sufficiently serious if it is so obvious even a lay person would recognize the need for treatment but that the Report overlooks this element. *Id.* He argues Defendant Rostollan was aware of facts from which an inference of excessive risk to his health or safety could be drawn and that Defendant Rostollan actually drew this inference. He notes other prisoners became aware of these same facts and drew this inference after observing Plaintiff's condition. *Id.* Even Defendant Rostollan, in his falsified clinical encounter, stated he was aware of Plaintiff's pain, and Plaintiff was noted to be limping. *Id.*

Plaintiff further claims the Report attempted to minimize his injury by citing Nurse Dusseau's observations on Monday morning that circulation and sensation were still intact and capillary refill was normal. *Id.* Plaintiff states the October 21, 2013 X-ray report notes "edema and swelling," and Nurse Dusseau's sick call report of that same date showed "significant edema" to the left ankle. *Id.* He asserts the Magistrate Judge erred by failing to consider that ignoring complaints of pain could amount to deliberate indifference and by determining Defendant Rostollan's actions amounted to no more than negligence. *Id.* Instead, Plaintiff argues there is "clear proof" of Defendant Rostollan's intent to treat him incorrectly throughout the incident. *Id.*

Plaintiff complains the Report focused on the treatment he received three days after his injury. *Id.* He argues that the immediate response by the medical personnel who saw him on Monday substantiated his injury as being a serious medical need. *Id.* He contends one episode of gross misconduct can amount to deliberate indifference even if the overall pattern reflects general attentiveness. *Id.*

Next, Plaintiff again asserts he has not had the opportunity to complete discovery.  *Id.*  Although the discovery plan in effect for the case allowed for only disclosure, Plaintiff suggests if he had been permitted to serve requests for admission, he could have asked Defendant Rostollan about whether Officer Terral had notified Defendant Rostollan of the injury, if Defendant Rostollan had conducted an assessment at the health services department, if Defendant Rostollan had falsified a clinical encounter, if Defendant Rostollan knew it was prohibited to obtain pills from unauthorized sources, and if Defendant Rostollan told Tory Haskins that he had not done an evaluation because Plaintiff chose not to.  Plaintiff also believes the findings of a Bureau of Prison investigation could be uncovered.  *Id.*

Plaintiff asserts he had a long dispute with the medical staff regarding the insulin line.  *Id.*  He submitted requests over a six-month period which caused several members of the nursing staff to be upset about the change.  *Id.*  This resulted in a temper outburst by Rayburn and additional grievances from Plaintiff.  *Id.*  He filed a BP-8 regarding this incident on September 17, 2013, prior to the incident with Defendant Rostollan.  *Id.*  Thus, Plaintiff asserts it is likely Defendant Rostollan was aware of these filings at the time he refused to provide treatment.  *Id.*

B. Defendant Wooding

Plaintiff states Defendant Wooding was aware Plaintiff had an obvious injury on October 18, 2013.  *Id.*  Defendant Wooding was also aware of Plaintiff's version of events, from properly reporting his injury, to Defendant Rostollan's refusal to assess or examine the injury, to Plaintiff possessing no medication or ice for the swelling and pain.  *Id.*  However, Plaintiff contends Defendant Wooding's response was to deter him from having witnesses in filing a grievance on the matter and to threaten him with being locked up if he returned to the medical department about his ankle injury before sick call, which was three days away.  *Id.*

According to Plaintiff, supervisors who know a prisoner is being treated unconstitutionally may be held liable if they fail to do anything about it, or do so in a manner which was deliberately indifferent. *Id*. He contends Defendant Wooding knew he was being treated unconstitutionally by Defendant Rostollan and that his injury was so serious a layperson would have recognized the need for medical care. *Id*.

Plaintiff asserts he has provided "solid evidence" showing that correctional officers supervise medical staff, arguing the affidavit stating otherwise is "factually unsupported and unsound." *Id*. He states he told Defendant Wooding the medical staff officer failed to perform his duties and indicates Defendant Wooding should have ordered Defendant Rostollan to provide Plaintiff with medical care. *Id*.

According to Plaintiff, policy and procedures required Defendant Rostollan to conduct an assessment of all injuries reported by unit officers. *Id*. These policies and procedures also guarantees the prisoners' right to be free from pain and state all correctional staff are led by lieutenants who monitor all prison operations and train, advise and consult with the staff on policies and procedures. *Id*.

Based on Defendant Rostollan's actions, Plaintiff argues Defendant Wooding had ample reason to second-guess the situation and advise Defendant Rostollan on following longstanding policy. *Id*.

Next, Plaintiff asserts the complained-of injury from Wooding was not the two hours in the dry cell but the three days of unnecessary pain and suffering which Plaintiff suffered over the weekend. *Id*. He contends this injury was more than *de minimis* and is sufficient to meet all of the elements of a deliberate indifference claim. *Id*.

Plaintiff states the Report concluded the interaction between Wooding and himself occurred after 8 p.m. *Id.* But Plaintiff argues it actually happened at 7:30 p.m., a time when medical personnel are still supposed to be present at the facility. *Id.* He states he saw Defendant Rostollan heading for the front lobby somewhat earlier, and this is why Defendant Wooding did not attempt to contact Defendant Rostollan, even though Defendant Rostollan is supposed to be on duty until 8 p.m. *Id.* Plaintiff asserts it was obvious to Defendant Wooding that Plaintiff had received no medical treatment and "any other lieutenant in that similar situation would not have ignored this information and denied this prisoner the medical attention he has a protected right to receive, as it was evident to Defendant Wooding that RN Defendant Rostollan could not have based his decision to deny the Plaintiff any medical attention based on any type of medical judgment." *Id.* at 29.

Furthermore, Plaintiff asserts the Report erred in assuming Defendant Wooding discussed his injury with Defendant Rostollan. *Id.* Based on Defendant Wooding's statement that he did not care about Plaintiff's ankle and wanted to know why Defendant Rostollan had said Plaintiff was being insolent, Plaintiff states it is more likely that Defendant Rostollan only told Defendant Wooding Plaintiff was being insolent to lock him up. *Id.* Plaintiff further contends Defendant Wooding's statement to the effect of not caring about Plaintiff's ankle demonstrated deliberate indifference. *Id.*

C. Defendant Williams

Although the Magistrate Judge recommended dismissal of the claims against Defendant Williams for failure to exhaust, Plaintiff asserts this was incorrect because he exhausted his grievances against Defendant Williams by raising them in his grievance no. 759927-F1. *Id.* He asserts he is allowed to raise "more than one closely related issue" in a grievance, and his request

to be removed from the Special Housing Unit was an action requested in resolving his complaint. *Id.* He claims his Step One grievance provided enough detail to identify Williams, the officer involved in placing him in the Special Housing Unit, and his Step Two grievance contained both his complaints against Rayburn and his claim of being in the Special Housing Unit for filing grievances. *Id.*

Plaintiff states his Step One grievance no. 759927 was accepted and answered by prison officials, and his Step Two grievance appeal of no. 759927 was eventually accepted and answered. *Id.* His Step Three appeal of this grievance was rejected by the prison officials at first and then interfered with when he attempted to resubmit it. *Id.* Plaintiff argues this served to exhaust his administrative remedies or to excuse him from the exhaustion requirements. *Id.*

With regard to the merits of his claims against Defendant Williams, Plaintiff asserts that he submitted grievances complaining of staff misconduct on October 28 and October 31, 2013, and was thereupon placed in the Special Housing Unit on November 6. *Id.* Defendant Williams told him he would not have been placed in the Special Housing Unit if he had not filed those grievances, and Plaintiff asserts this is a chronology from which retaliation may be inferred. *Id.*

Plaintiff further asserts Defendant Williams told him the investigation was "serious" but prolonged the investigation for months. *Id.* No interview was conducted with Plaintiff until he had been in the Special Housing Unit for almost 100 days, and his witnesses were never interviewed. *Id.* Even though Defendant Williams stated Plaintiff was placed in special housing to keep him safe from the medical department, Defendant Rostollan still administered medication to him. *Id.*

The Defendants argue placing a prisoner in special housing upon filing a grievance asserting staff misconduct is a routine standard procedure, but Plaintiff contends this defense is

factually unsupported.  *Id*.  He asserts he has previously filed grievances concerning alleged staff misconduct and was not placed in special housing.  *Id*.  In any event, even if this were standard policy, Plaintiff states such placement is recognized as a prohibited act by Fifth Circuit precedent.  *Id*.

Plaintiff states Defendant Williams told him if he had not filed a grievance and started the ball rolling, he would not have been placed in the Special Housing Unit.  *Id*.  This demonstrates he was placed in special housing specifically for filing a grievance.  *Id*.  He contends there was no legitimate non-retaliatory reason for his placement in special housing.  *Id*.

D. Qualified Immunity

Plaintiff contends all reasonable prison officials would know placing a prisoner in segregation for filing a grievance would violate the Constitution.  *Id*.  Thus, he maintains Defendant Williams is not entitled to qualified immunity.  *Id*.  He further argues he has shown the violation of a constitutional right with regard to each of his claims, through non-conclusory allegations.  *Id*.  Plaintiff points to the Admission and Orientation Handbook for the prison, which provides that prisoners must report injuries to their unit officers and that prisoners have the right to receive health care in a manner which recognizes their basic human rights, including the right to have pain assessed and treated.  *Id*.  Thus, Plaintiff asserts any reasonable officer would know the refusing to assess and ignoring of a prisoner's obvious ankle injury would result in substantial pain and thus violate the prisoner's clearly established constitutional rights.  *Id*. Plaintiff asserts he clearly communicated his need for medical care and did everything he could to get the Defendants to properly perform their duties.  *Id*.  He argues he pleaded facts showing constitutional violations with sufficient specificity to overcome a qualified immunity defense. *Id*.

**V. Discussion of Plaintiff's Objections**

A. Lack of Discovery

As discussed above, Plaintiff first raised the issue of lack of discovery in his objections. He then filed his separate Rule 56(d) motion for a continuance on the ruling on summary judgment (Docket No. 37), which the Court has denied herein. Plaintiff complains he was denied the opportunity to conduct discovery, stating he wished to serve interrogatories and requests for admission upon the Defendants. He contends it is improper to grant summary judgment prior to discovery. However, Fed. R. Civ. P. 56 does not require that any discovery take place before summary judgment can be granted. *Baker v. American Airlines*, 430 F.3d 750, 756 (5th Cir. 2005). Instead, if a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to its opposition, the court may take certain actions including deferring consideration of the motion, denying it, allowing time for discovery or issuing other appropriate orders. *See* Fed. R. Civ. P. 56(d).

Plaintiff's declaration in support of his Rule 56(d) motion states he wants discovery of: (1) investigative reports concerning grievances no. 759946, 756093, and 759935, in order to determine if the Bureau of Prisons found Defendant Rostollan committed the actions alleged and if disciplinary action was taken; (2) documents or statements made by Defendant Rostollan himself; (3) requests for admission directed at Defendant Rostollan, again to determine if he committed the actions alleged or if he was aware of or upset by Plaintiff's filing of complaints about the insulin line; (4) depositions of Officer Terral and the officers with him in the hallway when Plaintiff reported his injury; (5) a deposition of a former officer named Taylor, who would testify as to Plaintiff's limp over the weekend following his injury; (6) a deposition of Lt. Rolader, to testify he threw out the incident report written by Defendant Rostollan; (7) the duty

roster for October 18 through 21, to ascertain the identities of additional witnesses; (8) the ID scan records for the evening insulin line on October 18, 2013, to ascertain the identities of additional witnesses; (9) all complaints filed against Defendant Rostollan, including his disciplinary record; (10) interrogatories and requests for admission directed to Defendant Wooding; (11) a deposition of Officer Goodsell to corroborate Plaintiff's testimony; (12) job descriptions showing correctional officers' authority over medical personnel, which Plaintiff claims would show Defendant Wooding's assertion he has no authority over health services personnel would fail; (13) statements or memoranda from Defendant Wooding giving his version of events; (14) disciplinary actions taken against Wooding; (15) all complaints made against health services personnel over the past year, which Plaintiff claims would "uncover any pattern of such mistreatment of prisoners by Defendant Wooding;" (16) interrogatories and requests for admission directed against Defendant Williams; (17) policies or procedures regarding placing prisoners in Special Housing because the prisoner filed a grievance alleging staff misconduct; (18) production of all complaints against staff filed in the last 10 years, along with identification of each prisoner placed in Special Housing as a result; (19) documents created by Defendant Williams or showing Defendant Williams' job duties; and (20) production of all complaints against Williams as well as Williams' disciplinary record.  Docket No. 37–1

The discovery plan in effect for this case did not permit interrogatories or requests for permission except upon further order of the Court.  In any event, Plaintiff has not shown the discovery he requested would have revealed any genuine issues of material fact.  *See Rankin v. Pearson*, 612 F.App'x 204, 2015 U.S. App. LEXIS 7378 (5th Cir. 2015).  Request nos. 1, 2, 3, 4, 5, 6, 10, 11, 13 and 16 seek to verify or dispute Plaintiff's version of events, and thus are not essential to Plaintiff's claims because his allegations were taken as true.  *See Marshall v.*

*Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). Request nos. 7 and 8 seek to identify additional witnesses, who are not necessary at this stage because Plaintiff's allegations were taken as true. The disciplinary records of the Defendants, request nos. 9, 14 and 20, are also not essential because Plaintiff's allegations were taken as true. The Defendants' disciplinary records would not add anything to these allegations or to the facts presumed true by the Court.

Plaintiff fails to explain how request no. 15, discovery of complaints made against health service personnel over the past year, would uncover a pattern of abuse by Defendant Wooding, a correctional officer, nor does he show discovery of such complaints would develop facts essential to his claims. Request nos. 17, 18 and 19 do not involve exhaustion of administrative remedies but pertain to Plaintiff's claim against Williams, which the Magistrate Judge recommended be dismissed for failure to exhaust. As such, these are not facts essential to oppose the motion for summary judgment. Plaintiff has not shown entitlement to a Rule 56(d) continuance because the record shows the requested discovery is unlikely to produce the facts needed to withstand the motion for summary judgment. *See Mills v. Damson Oil Corp.*, 931 F.2d 346, 350-51 (5th Cir. 1991). Whether the Defendants' answers to interrogatories or requests for admission agreed or disagreed with the Plaintiff's version of events, the facts would still be assumed in the Plaintiff's favor. Plaintiff's objection to the lack of discovery is without merit.

B. Defendant Rostollan

The Magistrate Judge accepted as true all of Plaintiff's assertions, including his contention Defendant Rostollan saw him limping and told him to put ice on his ankle. Rostollan

also told him to simply take pain medication and follow up as needed.  Even given that Plaintiff had a serious medical need, these assertions do not rise to the level of showing deliberate indifference.  *See Guiden v. Wilson*, 344 F.App'x 980, (5th Cir. 2009) (failure to order medical care over the weekend for an infected boil and associated headaches was not deliberate indifference).  In *Curtis v. Gonzales*, No. SA-09-CV-0911, 2010 WL 3928521 (W.D. Tex. Oct. 5, 2010), the plaintiff complained about an ear infection on October 31, 2007, but security would not take him to the medical department because he had to file a sick call request.  On November 1, 2007, a tooth in the plaintiff's jaw broke, but once again he was told he had to file a sick call request.  On Saturday, November 2, 2007, the plaintiff gave a member of the medical staff a sick call request asking to be taken to the dental department, and the dental department received an I-60 inmate request from the plaintiff that same day.  On Monday, November 5, a nurse refused to treat him, instead giving him a sick call form.  He was taken to the dental department that same day but was told that nothing could be done at that time because the broken tooth was infected.  He was given antibiotics and returned to his cell.  Two days later, the abscess burst.  He was taken to the hospital where surgery was done to remove the broken tooth.  The district court held these delays did not amount to deliberate indifference.

Plaintiff's disagreement with Defendant Rostollan's assessment of the situation does not show Defendant Rostollan was deliberately indifferent to his serious medical needs.  *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  Likewise, the fact that Plaintiff believes a different treatment regimen should have been undertaken does not show deliberate indifference.  *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).  This objection is without merit.

The Magistrate Judge also accepted as true Plaintiff's assertion Defendant Rostollan wrote a false incident report which was eventually thrown out by Lt. Rolader. Docket No. 80. Based on the facts as stated by Plaintiff, the Magistrate Judge concluded Plaintiff failed to show any harm resulting from the fact Defendant Rostollan wrote an incident report which was never processed. *Id.* Plaintiff does not controvert this conclusion. His objection on this point is without merit.

Similarly, Plaintiff indicates Defendant Rostollan advised a supervisor he did not examine Plaintiff's ankle because Plaintiff chose not to have an examination. Docket No. 36. The Magistrate Judge accepted as true Plaintiff's contention Defendant Rostollan did not examine his ankle. Docket No. 80. Plaintiff showed no harm resulting from anything Defendant Rostollan may have told his supervisor. This objection is without merit.

Plaintiff complains Defendant Rostollan falsified a clinical encounter (recorded in the medical records as an "evaluation encounter"). Docket No. 36. The Magistrate Judge correctly observed unsupported assertions a medical record has been falsified are insufficient to create a genuine issue of material fact concerning the medical care received by a prisoner. Docket No. 30. In any event, the Magistrate Judge took Plaintiff's statement that no evaluation took place as true and the medical records from the following Monday and beyond clearly reflect Plaintiff suffered an injury. *Id.* Plaintiff has not shown any harm resulting from the allegedly falsified evaluation encounter written by Defendant Rostollan. This objection is without merit.

Plaintiff further complains Defendant Rostollan did not provide him with pain medication, but instead suggested that he buy it at the commissary or get it at the housing unit. Docket No. 36. The Magistrate Judge correctly determined whether or not this amounted to negligence, Defendant Rostollan's action did not rise to the level of deliberate indifference. *See,*

*e.g.*, *Moneer v. Harrison Cty. Det. Ctr.*, No. 1:07CV1060, 2009 WL 1663745 (S.D. Miss. June 15, 2009) (denial of pain medication for three days to pre-trial detainee suffering from fractured jaw did not constitute deliberate indifference but at most may have been negligence). Plaintiff's objection on this point is without merit.

With regard to his claim of retaliation by Defendant Rostollan, Plaintiff asserts he had a long dispute with the medical staff over how the insulin line should be conducted. Docket No. 36. Plaintiff submitted requests over a six-month period, which upset several members of the nursing staff. *Id*. Plaintiff describes a temper outburst by Rayburn, which resulted in additional grievances. *Id*. Plaintiff states he filed a BP-8 request for informal resolution on September 17, 2013, regarding the incident with Rayburn. *Id*. Plaintiff asserts it is "likely" Defendant Rostollan was aware of these filings at the time he refused to provide treatment. *Id*.

As the Magistrate Judge determined, Plaintiff's allegations are not sufficient to demonstrate a chronology of events from which retaliation may plausibly be inferred. Docket No. 80. He simply speculates that Defendant Rostollan was aware of the grievances he filed. The general allegation that "several members of the nursing staff were upset" over Plaintiff's attempts to change the operation of the insulin line does not show such a chronology. *See Reese v. Skinner*, 322 F.App'x 381, (5th Cir. 2009) (allegation that harassment of the plaintiff intensified after he started filing grievances was insufficient to show "but for" causation to support a retaliation claim). This objection is without merit.

Plaintiff additionally states that in December of 2013, he was told by other prisoners that they had overheard medical staff talking about Plaintiff and his grievances. This hearsay assertion is insufficient to sustain a retaliation claim. *Jost v. Quarterman*, No. 7:06-CV-031, 2008 WL 4787644 (N.D. Tex. Oct. 29, 2008) (statement that petitioner "was told" officer against

whom he had filed grievances had influenced the warden to take disciplinary action was hearsay and insufficient to demonstrate a retaliatory motive); *McDonald v. Stewart*, 132 F.3d 225, 232 (5th Cir. 1998) (statement recounting a conversation between two officers which the witness overheard was inadmissible hearsay and insufficient to prove a conspiracy). Plaintiff's objection on this point is without merit.

B. Defendant Wooding

Plaintiff stated Defendant Wooding told him Defendant Rostollan claimed Plaintiff was insolent in the pill line. Docket No. 36. Defendant Wooding also told him he could not file a grievance because there were no witnesses. *Id.* Plaintiff acknowledges that he was able to and did file grievances about the incident. *Id.* To the extent Plaintiff claimed he was deterred from filing grievances, or that he was otherwise harmed by Defendant Wooding's statement, his objection is without merit.

Plaintiff also contends Defendant Wooding should have ordered Defendant Rostollan to provide Plaintiff with medical care. *Id.* An affidavit from Torrey Haskins, assistant health services administrator at FCI-Texarkana, stated lieutenants supervise other correctional staff but do not supervise health services staff and have no authority to direct health services personnel to evaluate or treat a prisoner. Docket No. 12–2.

Plaintiff disputed this, pointing to Program Statement No. 5500.13 as stating security will be maintained by correctional staff. They are guided by clearly written policies and procedures and led by captains and lieutenants who monitor operations, train, advise and consult with those staff. According to Plaintiff, this program statement shows lieutenants do supervise health services staff and have authority to order health services personnel to evaluate or treat a prisoner.

The Magistrate Judge determined Defendant Wooding, as a correctional officer, does not supervise members of the medical staff such as Defendant Rostollan. Docket No. 30. Plaintiff's objections again claimed Defendant Wooding had supervisory authority over Defendant Rostollan, but even the program statement he cites refers to correctional staff maintaining security and superior officers who train, advise and consult with "those staff," clearly referring to the correctional staff mentioned in the same sentence. Plaintiff's objection on this point is without merit.

Even if Defendant Wooding somehow had authority to supervise Defendant Rostollan, despite his lack of the training and knowledge possessed by a registered nurse, Plaintiff has still failed to show a constitutional violation by Defendant Wooding. He claims Defendant Wooding "knew that the Plaintiff was being treated unconstitutionally by Defendant Rostollan" but fails to show Defendant Wooding actually had this knowledge, particularly in light of the fact Plaintiff has not shown Defendant Rostollan acted with deliberate indifference to his serious medical needs. Absent a constitutional violation by Defendant Rostollan, Plaintiff cannot show a constitutional violation through any purported supervisory role of Defendant Wooding. *Gibbs v. King*, 779 F.2d 1040, 1046 n.6 (5th Cir.), *cert. denied* 476 U.S. 1117 (1986) (absent primary liability, there can be no supervisory liability).

Plaintiff states he told Defendant Wooding of his conversation with Defendant Rostollan. Docket No. 36. Based on this conversation, Defendant Wooding would have known Defendant Rostollan told Plaintiff to ice his ankle and take pain medication. Plaintiff appears to contend Defendant Wooding should have known the advice given to Plaintiff by a medical professional was incorrect. The Magistrate Judge properly determined Defendant Wooding was entitled to rely on Defendant Rostollan's expertise as a registered nurse and did not have a constitutional

obligation to second-guess Defendant Rostollan's assessment. *Nelson v. Griffin*, No. 5:16-CV-49-, 2017 WL 2274252 (E.D. Tex. May 25, 2017); *Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990). Plaintiff's objection on this point is without merit.

The Magistrate Judge also concluded Plaintiff did not show substantial harm from the delay in obtaining medical care from Friday night until Monday morning. Docket No. 30. Although Plaintiff stated the swelling nearly doubled the size of his left leg, the Magistrate Judge noted by the time Plaintiff saw medical personnel on Monday, this swelling had gone down to the point where the nurse noted only that the capillary refill was normal. *Id*. The distal circulation and sensation were intact to the distal left foot. *Id*. Plaintiff asserts the Magistrate Judge's recounting of the nurse's notes on Monday morning amounted to "minimizing / downplaying" of the Plaintiff's injury; he points to an X-ray report dated October 21, 2013, which showed an acute mildly displaced fracture to the left ankle with edema and swelling. Docket No. 36.

The Magistrate Judge's Report did not minimize Plaintiff's injury but made clear Plaintiff suffered a fracture to his ankle and recounted the medical records concerning this injury. Docket No. 30. These records show the swelling complained of by Plaintiff went down over the weekend. *Id*. Moreover, by November 22, 2013, Plaintiff had full range of motion and no swelling or inflammation. *Id*. The Magistrate Judge correctly determined even if Defendant Wooding were somehow responsible for the delay in medical care from Friday evening until Monday morning, Plaintiff failed to show he suffered substantial harm as a result. *Id*. This objection is without merit.

C. Defendant Williams

Plaintiff complained Defendant Williams retaliated against him by placing him in the Special Housing Unit after he filed grievances. Docket No. 1. The Magistrate Judge determined Plaintiff failed to exhaust his administrative remedies against Defendant Williams. Docket No. 30.

The Magistrate Judge reviewed the grievances filed by Plaintiff. Of these, Step One Grievance Nos. 756093 and 756322 were filed before Plaintiff was placed in the Special Housing Unit. Grievance No. 759927 concerned a memorandum Rayburn submitted regarding an incident that occurred on September 11. Plaintiff also stated he did not wish to remain locked up in the Special Housing Unit for an extended period of time, but this was the only mention of his placement there. Grievance Nos. 759935 and 759946 complained about Defendant Rostollan's treatment of his ankle.

None of Plaintiff's Step One grievances complained about Defendant Williams or about being placed in the Special Housing Unit in retaliation for previous grievances. While Plaintiff complained about his placement in Special Housing and about Williams in some of his Step Two grievance appeals, the Bureau of Prisons grievance procedure does not permit inmates to raise new issues in their grievance appeals which were not raised in the lower level filings. 28 C.F.R. §542.15(b)(2). Thus, the Magistrate Judge determined this claim was not properly exhausted. Docket No. 30.

In his objection, Plaintiff states that he raised an issue in Step One grievance no. 759927. This grievance reads in pertinent part as follows:

> I am reporting another continued act of medical staff misconduct. In connection with my Request for Administrative Remedy 10:756322-F1. HSA [health services administrator] Rayburn submitted a memorandum that was just brought

to me by my counselor Starnes on 11/18/13.  My complaint is how completely dishonest this memorandum of his is.  I know that staff are to be believed over inmates, especially this being an administration staff.  But, the September 11 incident as I reported it in my September 17 affidavit that I submitted along with my Sept. 17 BP-8 is the complete truth.  All I was doing was continuing my attempts at an informal resolution on the proper insulin line time, and never throughout that 6+ months of these attempts was I disrespectful or angered toward Rayburn.  His actions that I reported were completely out of line and totally unprovoked.  So it seems that he made up this story to try to counter that.  There are plenty of possible witnesses to the incident, and given the right line of questioning, Rayburn himself, P.A. B. Stuart, RN C. Dusseau, RN C. Ogden, and a few inmate witnesses should all bring out the inconsistencies and blunt untruthfulness of his story.

After discussing potential witnesses to the September 11 incident, including Unit Manager Goodsell, Physician's Assistant Stuart, Nurse Dusseau, Nurse Ogden and inmates in the insulin line (Richard Oflying, Clayton Smart, Sherman Ryan), Plaintiff states as follows:

I don't mean to be bothersome to the staff here with these filings.  I definitely do not want to be transferred, nor do I want to remain locked up in the SHU for an extended time period.  I hope that I have provided enough information to help shorten my placement in administrative detention and quicken administrative action in this matter.

Plaintiff's grievance states his September 17 affidavit was the truth and expresses his willingness to take a lie detector test, offering to pay the costs of the test if it is determined he is lying.  He points out inconsistencies in Rayburn's statement and says Rayburn never denied throwing his work bag.  Plaintiff notes he does not remember seeing Rayburn with his workbag since he, Plaintiff, filed the BP-8, which was something Plaintiff used to always see Rayburn with.  Plaintiff stated this was another sign of Rayburn's guilt.

The Fifth Circuit has explained a grievance should give prison officials fair notice of the problem which will form the basis of the prisoner's lawsuit.  *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004).  As a practical matter, this means the amount of information necessary will depend to some degree on the type of problem about which the prisoner is complaining.  For

example, the Fifth Circuit stated if a prisoner claims a guard acted improperly, the administration would want to know and the prisoner would ordinarily be expected to provide details regarding who was involved and when the incident occurred, or at least information which would permit an investigation of the matter. By contrast, a grievance stating a prisoner's cell is habitually infested with vermin or the commissary prices are too high could adequately alert administrators to the problem whether or not the grievance actually names anyone. *Id*. at 517.

The Step One grievance no. 759927 filed by Plaintiff is not sufficient to alert prison authorities to Plaintiff's complaint Defendant Williams retaliated against him by placing him in the Special Housing Unit. Plaintiff does not even specifically complain about being in the Special Housing Unit or assert he was improperly placed there but states only that he does not want to remain there for an extended period of time. Plaintiff's contention this grievance served to exhaust his administrative remedies is without merit.

Plaintiff also contends his grievance appeals no. 756093 and 756322 suffice to exhaust administrative remedies, despite the fact that he did not raise his claims at the first step, arguing these grievances were not rejected as improper but were answered on the merits by the prison officials. Docket No. 36. He cites *Gates v. Cook*, 376 F.3d 323, 331 (5th Cir. 2004). In *Gates*, the court held that the technical defect of submitting a grievance directly to the commissioner rather than going through the legal adjudicator had been waived because the prison administration ignored this technical defect but instead addressed the request at the administrative level and denied it for matters of substance. *Gates*, 376 F. 3d at 331. He also cites *Johnson*, 385 F.3d at 520, in which a grievance filed on December 30 which purportedly challenged a December 13 hearing was not rejected as untimely. Yet in that case, the prison

administration did not treat the grievance as a challenge to that hearing but as a general complaint about a lack of protection. *Johnson*, 385 F.3d at 520.

The raising of new issues in a grievance appeal is not merely a technical defect but is an attempt to short-circuit the grievance process by not permitting review at all levels of the procedure. Plaintiff filed Step One grievances to the warden. But at the Step Two appeal level, he raised new issues over incidents which had not yet even occurred when the Step One grievance was filed. As a result, these new issues could not be addressed at the BP-8 (informal resolution) or BP-9 (grievance to the warden) levels. The Supreme Court has explained purposes of the grievance procedure include affording correctional officials the time and opportunity to address complaints internally before allowing the initiation of a federal case. *See Porter v. Nussle*, 534 U.S. 516, 525 (2002). This would allow for corrective action and filter out bad claims. *Id*. Unlike the situations in *Gates* or *Johnson*, the raising of new issues in an appeal circumvents the very purpose of the grievance procedure.

Plaintiff's Grievances Nos. 756093 and 756322 were initiated prior to his placement in the Special Housing Unit. He offers no explanation why he could not have filed a Step One grievance specifically raising his allegation of retaliation by Defendant Williams. The Fifth Circuit has specifically held that "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). Plaintiff did not properly exhaust the prison grievance process when he chose to raise new issues in a Step Two grievance appeal rather than filing a new Step One grievance. *See Tyson v. Watts*, No. A-06-CA-741, 2007 WL 509240 (W.D. Tex., Feb. 12, 2007), *Report adopted* Aug. 15, 2007 (plaintiff only exhausted one issue because he

could not raise in an appeal issues not raised in the lower level grievances). Plaintiff's objection on this point is without merit.

## D. Qualified Immunity

Plaintiff contends it would be "clear error" to grant qualified immunity because on the facts alleged, a constitutional right has been violated and the conduct complained of was objectively unreasonable. Docket No. 36. He points to general policy statements from the Texarkana Federal Correctional Institution Admissions & Orientation Handbook to the effect that unit officers will contact the medical department to have prisoners evaluated; prisoners have the right to receive health care in a manner which recognizes their basic human rights; prisoners have the right to health care services based on the local procedures of the facility; and prisoners have the right to the assessment of pain and to have their pain treated accordingly. *Id*. Even if these policy statements were violated, the Fifth Circuit has held that a violation of prison rules and policies alone is not sufficient to rise to the standards of a constitutional claim. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986).

Plaintiff has not shown a constitutional violation, nor has he demonstrated the Defendants acted in an objectively unreasonable manner. As a result, he has not met his burden of overcoming the qualified immunity defense. *See Kovacic v. Villareal*, 628 F.3d 209, 211 (5th Cir. 2010). Plaintiff's objections are without merit.

## VI. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or

specified proposed findings or recommendations to which objection is made.")  Upon such *de novo* review, the Court finds Plaintiff's objections without merit.  The Court adopts the Report and Recommendation of the Magistrate Judge as the findings and conclusions of the Court.  It is accordingly

ORDERED the Plaintiff's Rule 56(d) motion to continue the ruling on summary judgment (Docket No. 37) is **DENIED**.  It is further

ORDERED the Defendants' motion for summary judgment (Docket No. 12) is **GRANTED** and the above-styled civil action is **DISMISSED WITH PREJUDICE**.  It is further

ORDERED any and all motions which may be pending in this civil action are hereby **DENIED**.

So ORDERED and SIGNED this 29th day of September, 2017.

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE